IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

RANDY L. HANSON, JR.,

                Plaintiff,
  v.                                                     OPINION AND ORDER

KILOLO KIJAKAZI,                                 22-cv-336-wmc
Acting Commissioner of Social Security,

                Defendant.
_____

      Plaintiff Randy Hanson seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration, finding that Hanson was not disabled within the meaning of the Social Security Act.  Specifically, Hanson contends the administrative law judge (ALJ) erred by concluding that he could manage full-time work despite severe physical and mental impairments.  However, the court must affirm the Commissioner's decision because:  (1) the ALJ adequately explained how she determined that Hanson could perform sedentary work with postural, environmental and mental limitations; and (2) her findings are supported by substantial evidence in the record.

BACKGROUND

      Hanson applied for disability benefits in March 2016, and supplemental security income in June 2016, alleging severe impairments, including back pain, diabetes and depression.  He also alleged an onset date of January 2008, when he was 29 years old.  (AR 78–79, 210, 217.)

      Hanson's medical records confirm that he has experienced: two hand fractures in 2008 (AR 873–74; 1003; 1007); chronic back and neck pain (AR 1371–72, 1403, 1498; 2109–10;

2069; 2168–71, 2123, 2448, 2165 ); obesity (AR 1356, 1372, 1985); a posterior cervical fusion in December 2015 (AR 2128–55); treatment for anxiety and depression (AR 1383, 1403, 2109–10; 2168–71); and multiple rounds of physical therapy for his back and shoulders, beginning in 2010 (AR 1378, 1420–49; 1456–57; 1936–41; 2041–42). In addition, Hanson began complaining about bilateral hand numbness, tingling and weakness in April 2016, along with lower extremity weakness and difficulty in balance and gait, conditions that continued to the present. (AR 2116–7; 2107; 1569; 1915; 1932; 1956.) In March 2017, his medical imaging further showed myelomalacia involving the dorsal aspect of the spinal cord at the C1-2 level. (AR 2472–75.)

After Hanson's claim for benefits was denied by the local disability agency initially and on reconsideration, an ALJ held an evidentiary hearing and issued a decision finding him not disabled in May 2019. (AR 17–33, 39–71.) After the Appeals Council denied Hanson's request for review, Hanson filed a complaint in this court. (AR 1704–05.) The parties agreed to remand Hanson's case to the agency for further proceedings (AR 1714–15), and the Appeals Council issued a remand order instructing the ALJ to further evaluate the medical opinion evidence and Hanson's maximum ability to work, with particular regard to his manipulative limitations. (AR 1720–22.)

ALJ Virginia Kuhn then held a second evidentiary hearing in December 2020. (AR 1630–71.) At that hearing, Hanson testified that he could not work due to back, shoulder, elbow, hip and knee pain, as well as difficulty standing, walking, balancing and using his hands and fingers. (AR 1646–51.) He also stated that he had difficulty changing positions and experienced frequent falls. (AR 1639.) Further, while describing his use of a grab bar getting in and out of the bathtub and a cane for holding himself up and walking, Hansen testified he

could stand for only a few minutes at a time. (AR 1643.) Finally, Hanson testified that tremors and cramps in his hands made it difficult for him to brush his teeth, write and grasp, and he dropped things frequently. (AR 1643–45, 1659.)

A vocational expert (VE) also testified at the hearing, opining that someone with Hanson's residual functional capacity as set forth in hypotheticals posed by the ALJ could perform the sedentary jobs of address clerk, with 7,900 jobs nationally; lens inserter, with 15,000 jobs nationally; and dowel inspector, with 4,000 jobs nationally. (AR 1663, 1666.) Neither the ALJ nor Hanson's counsel asked the VE to identify the source of his job numbers; nor did they ask whether any of the jobs were outdated.

ALJ Kuhn issued a decision unfavorable to Hanson in February 2021 (AR 1583–1622), despite finding that Hanson had the following severe mental impairments: cervical myelopathy, status-post fusion; obesity; diabetes mellitus; depression; and anxiety. (AR 1586–96.) In particular, the ALJ found that Hanson retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work subject to the following limitations:

> no climbing ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional overhead reaching, occasional stooping and crouching; no kneeling, no crawling, and no balancing but this is strictly within the context of being at heights or needing to walk along a narrow plant; frequent handling and fingering; and generally no work at unprotected heights or with dangerous moving machinery; as well as use of a cane for ambulation; and routine, repetitive detailed but not complex types of tasks and instructions, and these would align with a reasoning level in the "Selected Characteristics of Occupations" to the "Dictionary of Occupational Titles" ("DOT") of no greater than a two(2); occasional brief and superficial interaction with coworkers and the public, however these are tasks that can be performed independently and would not require collaboration or teamwork with others and would not require direct serving of the public; and finally no fast pace high production goal or quota type tasks such as on an assembly line, a moving conveyor belt or hourly quotas.

(AR1596–97.) Relying on the testimony of a VE, the ALJ found that Hanson could not perform any past relevant work, but that even with his restrictive RFC, he could still perform work that was available in significant numbers in the national economy, including the address clerk, lens inserter, and dowel inspector jobs. (AR 1621–22.)

Hanson appealed again. However, this time the Appeals Council denied Hanson's request for further review, making the ALJ's second decision the final decision of the Commissioner.

OPINION

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Reviewing courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022). "Rather, this court asks whether the ALJ's decision "reflects an adequate logical bridge from the evidence to the conclusions." *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Here, Hanson contends that the ALJ's decision was not supported by substantial evidence because the ALJ erred in three areas: (1) evaluating the medical opinions of Hanson's two treating providers; (2) evaluating Hanson's subjective symptoms; and (3) relying on the opinion of the VE. The court addresses each of these arguments below.

I.   Medical Opinions

Plaintiff's principal criticism is that the ALJ declined to give much weight to the opinions of two of Hanson's treating physicians, Drs. Jeffrey Eichten and Thomas Silvestrini, both of whom opined that Hanson had work-preclusive physical limitations. Because Hanson filed his original claim before 2017, his treating providers' opinions are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c). An ALJ "must offer good reasons" for giving a treating physician's opinion less than controlling weight. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Moreover, in light of the stipulated remand by the Appeals Council for the ALJ to evaluate the medical opinions further, her task could not have been much clearer. Still, "so long as the ALJ 'minimally articulate[d]' his reasons," and considered the proper factors, this court is directed to uphold a decision to discount a treating physician's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

   a.  Dr. Eichten

Hanson started treatment with Dr. Jeffery Eichten, a family practice doctor, in August 2012 (AR 2174–92; 2195–98), and he began complaining to Eichten about back pain in the spring of 2015 (AR 2168, 2171). Eichten initially prescribed pain medication, steroid injections, weight loss and exercise (AR 380, 1600, 2168), but eventually referred Hanson to neurosurgery. (AR 2163.) After his December 2015 neck surgery, Eichten also continued to treat Hanson for post-surgery pain, as well as, among other things, for anxiety and depression, diabetes and arm numbness. (AR 320, 1601–04.)

In March 2019, Dr. Eichten assessed Hanson's limitations in a medical source statement. (AR 1933–34.) He opined that in an eight-hour workday, Hanson could sit and stand for up to two hours; never lift and carry more than 10 pounds; rarely finger and handle; occasionally grasp; and never stoop or crouch. (AR 1933.) Eichten also explained that Hanson's pain would be severe enough to frequently interfere with simple work tasks, and he anticipated Hanson would be absent more than four days a month due to his impairments. (AR 1933–34.) Further, in November 2020, Eichten issued an updated opinion, stating that Hanson would be unable to work for an eight-hour day and would need unscheduled breaks. (AR 2387.)

The ALJ explained that these opinions were entitled to "little weight" because they were inconsistent with Dr. Eichten's own treatment notes, objective medical records and Hanson's overall functioning, which showed pain control with medication, improvement through physical therapy, and only intermittent problems with numbness and tingling. (AR 1613–14.) Plaintiff challenges the ALJ's evaluation, arguing that she presented a slanted interpretation of the medical records, overemphasizing Eichten's so-called "stable" findings, while underemphasizing the numerous records showing Hanson's abnormalities, including chronic diffuse myopathy, gait instability, reduced grip strength and balance, and pain.

However, the ALJ expressly acknowledged Hanson's medical history in her decision, thoroughly documenting his complaints of pain, numbness and tingling, balance problems and falls, use of a cane and cervical fusion surgery. (AR 1600–06.) At the same time, the ALJ accurately noted that many of Hanson's medical records showed improvement with physical therapy and pain medication, normal range of motion and sensation, and grip strength within functional limits. (AR 1604–05.) She also noted that Hanson's function report described

6

numerous activities that were inconsistent with Dr. Eichten's opinions of Hanson's limitations, including his ability to cook, clean, do laundry, fish and mow the lawn, albeit with breaks. (AR 1609.)

The ALJ also acknowledged Eichten's longstanding treatment relationship with Hanson, and spent several pages comparing Eichten's progress notes in Hanson's medical records with Eichten's opinion about his limitations. (AR 1612–16.) Contrary to plaintiff's argument, the ALJ's findings that Eichten's opinions were inconsistent with the treatment records were well-explained and supported by substantial evidence. In sum, the ALJ properly articulated why she found Dr. Eichten's ultimate, conclusory opinion that Hanson could not work unpersuasive.

### b. Dr. Silvestrini

Hanson originally saw Silvestrini for a consult in May 2017. (AR 2106–07.) Hanson saw him again in August 2017 (AR 1916–17, 1930), when Silvestrini gave the opinion discounted by the ALJ that Hanson's back injury was "catastrophic," had resulted in significant loss of balance and his ability to sense movement and location, and that even if Hanson could work a sedentary level, he could not do so competitively due to difficulties with concentration, as well as issues with coordination and reaction time. (AR 1917, 1930.) Silvestrini also noted that Hanson would get fatigued easily because of his spinal cord injury and neurologic weakness, limiting his capacity for work on a sustained basis. (*Id.*) Hanson saw Dr. Silvestrini several more times between August 2017 and November 2020.

In November 2020, Silvestrini issued an updated opinion, noting that despite not being accurately diagnosed until 2015, the myelomalacia changes in Hanson's record were clearly

chronic and likely predated 2015. (AR 2653.) Silvestrini also noted that Hanson had decreased position sense, an inability to stand or balance because he could not tell where his feet were, and a decreased reaction time. (*Id.*) Silvestrini stated that Hanson was required to us a single-end cane and was limited in lifting as he could only lift with one hand, ultimately opining that no treatment would reverse his condition, his changes were permanent and his impairments would worsen as he aged. (*Id.*)

The ALJ gave Dr. Silvestrini's opinions little weight for largely the same reasons she rejected Dr. Eichten's restrictive opinions: they were inconsistent with his own treatment notes; they were speculative; some of the opinions related to impairments outside the doctor's area of expertise; they were not based on objective exam findings; and they were inconsistent with other substantial record evidence, as well as Hanson's reported activities. (AR 1616–19.) Plaintiff again criticizes the ALJ for cherry-picking the evidence and disregarding medical records that supported Silvestrini's opinions, but these arguments also go to the weight given this conflicting evidence. Since the evidentiary picture remains one from which reasonable people could reach different conclusions about Hanson's ability to work, this court must again defer to the ALJ's adequately explained findings. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

## II. Subjective Symptoms

Plaintiff also challenges the ALJ's refusal to fully credit Hanson's subjective reports of his impairments and how they prevent him from walking, gripping, balancing, or carrying items for any significant amount of time and without pain, such that he is incapable of working. Under the social security regulations, the ALJ's decision "must contain specific reasons for the

weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9.  If that standard is met, reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)).  "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.*  Moreover, not all the ALJ's reasons for discounting a claimant's subjective complaints need survive scrutiny so long as some of them do. *McKinzey*, 641 F.3d at 890.

Here, the ALJ rejected Hanson's subjective allegations for largely the same reasons she rejected Dr. Eichten's and Dr. Silvestrini's restrictive opinions: they were inconsistent with Hanson's reported activities and the clinical findings, both of which contradicted such extreme functional limitations.  After providing a detailed analysis of the medical evidence and Hanson's activities, the ALJ adopted an RFC limiting Hanson to sedentary work with detailed, additional restrictions to account for Hanson's severe impairments *and* subjective symptoms. Accordingly, Hanson has not demonstrated that the ALJ erred when evaluating his subjective complaints.

### III.    Vocational Expert's Testimony

Hanson's final argument is that the ALJ erred by failing to confirm that the VE's testimony was supported by substantial evidence.  However, the court agrees with the Commissioner that plaintiff forfeited this argument by failing to raise it during the

9

administrative hearing. *See Leisgang v*. Kijakazi, No. 22-1970, --F.4th--, 2023 WL 4188500, at *2 (7th Cir. June 26, 2023) ("[A] claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection."); *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) ("[A] claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections."). In particular, the *only* question plaintiff's counsel asked the VE was whether an individual with more limitations that the ALJ assessed in her hypothetical and who would miss more than two days of work per month, would be able to perform the jobs identified. (AR 1668–69.) Thus, by failing to explore the underlying basis for or make any specific objection to the VE's job number estimates, plaintiff forfeited any argument that the VE's job number estimates are unreliable.

Because plaintiff has not shown any basis for remand of the ALJ's disability decision, the Commission's decision denying disability benefits and supplemental security income will be affirmed.

ORDER

IT IS ORDERED plaintiff Randy Hanson's motion for summary judgment (dkt. #18) is DENIED. The decision of the Acting Commissioner of Social Security denying Hanson's application for disability benefits and supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment and close this case.

Entered July 20, 2023.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge